## MARY E. CAPERS *et al.* v. DAVID McCAA.

1. RESULTING TRUSTS: REASON OF: EVIDENCE TO REBUT.—When a purchase is made in the name of one person, and the purchase-money paid by another, the law presumes that the party whose money is applied to the payment of the property intended it for his own use, and that the nominal purchaser is a mere trustee. This presumption may be rebutted by proof, showing that such was not the intention between the parties. Adams' Equity, 33.

2. RESULTING TRUSTS NOT ESTABLISHED AGAINST A VENDOR WHOSE PURCHASE-MONEY HAS NOT BEEN PAID.—A resulting trust can never be es-

tablished against a vendor whose purchase-money has not been paid, and who has not acted in bad faith.

3. SAME : CASE IN JUDGMENT.—C. purchased from M. a certain tract of land. A portion of the purchase-money was paid in cash, the money of the wife of C., and the promissory notes of C. given for the balance. To secure the payment of the notes, C. and wife mortgaged the lands to M., who at the same time conveyed them to C. Subsequently some of the notes were paid by the money of the wife of C. Held—That as against M. a resulting trust in favor of the wife could not be established for the amount of her money which had been applied in part payment of the purchase-money.

4. CHANCERY COURT HAS NO JURISDICTION IN MATTERS OF ADMINISTRA-TION.—The Chancery Court has no jurisdiction to compel an administrator to render an account of personalty received by him, nor to review his acts as such, nor to revise and correct his errors and mistakes. Such matters belong exclusively to the Court of Probates.

5. CHANCERY COURT : JURISDICTION.—The Chancery Court has no jurisdiction of a bill filed to enforce a claim for an improper conversion of property.

APPEAL from the Chancery Court of Claiborne County. Hon. James M. Smiley, chancellor.

An abstract of the pleadings will be found in the opinion of the court. No testimony was taken in the cause.

*J. H. and J. F. Maury*, and *J. S. Morris*, for appellants, contended :

1. That the payment of the money of the wife towards the purchase of the land gave her an interest in proportion that the amount paid bears to the purchase-money. 4 Kent, 301 to 310 ; 2 Maddox, 113 ; 2 Sugden on Vendors, 152 ; 1 Equity Cases, 380 ; 2 Story's Equity J. 1201 ; Adams' Equity, 165 ; 1 Johns. Ch. R. 450 ; Rev. Code, 336, arts. 33, 34.

It is an interest arising by operation of law, and not affected by the statute of frauds. 3 Equity Cases, 747 ; Rev. Code, 359, art. 5.

2. That a resulting trust may be raised by parol evidence. Reeves Dom. R. 308–445 ; 1 Johns. Ch. R. 231, 586 ; 2 ib. 405 ; and much more may it be established by the record confession of the nominal purchaser. 2 Sugden on Vendors, 157.

3. That it was contended that the conveyance and the mort-

Capers et al. *v.* McCaa.

gage were one act; and if so, the resulting trust never existed. A portion of the purchase-money was paid by the wife, it was received by the grantor McCaa, and she, that very instant and by that act, became invested with an equitable interest in the land to the extent of the payment, and her husband held the naked legal title for her use and benefit.

Though the wife joined in the mortgage, it could not reach or encumber her interest, because she was legally incapable of making such a conveyance as a security for her husband's debts. Rev. Code, 336, art. 23.

4. That the two last payments were made after the conveyance, and with a knowledge by McCaa that it was the money of Mrs. Capers. Upon a misapplication of funds by a trustee, the *cestui que trust* may pursue the funds in any property into which it may be converted, and into the hands of a third party having notice of the misapplication. 2 Story's Equity J. 1257; Adams' Equity, 165, and cases there cited.

5. That McCaa is responsible to Mrs. Capers for the amount of her separate property which he has converted to his own use, or to his use as administrator. This property had no connection with the estate of which McCaa was administrator; he could not be made to account for it in the Probate Court. When McCaa, by his bill, seeks to make property of Mrs. Capers liable for his debt, it is competent for her to resist the demand by showing that it is paid, or by setting up as an offset her claim against him.

6. That the husband is trustee for the wife to the extent of any funds in her hands, which is her separate property and protected by the law. 2 How. Miss. 752; 30 Miss. R. 161; 36 ib. 511.

7. That Mrs. Capers will be entitled to elect between a lien on the land for the repayment of her money with interest, or to an interest, *pro tanto*, in the land itself. *Oliver* v. *Pratt*, 3 How. U. S. R. 333; Bonsall's Appeal, 1 Rawl. 266; 2 Serg. & R. 521; 1 Rich. Eq. 426.

8. That, even if the Probate Court has jurisdiction of the administration of McCaa, yet a court of chancery, having the parties before it, upon matters confessedly within its jurisdic-

tion, will take jurisdiction of the entire controversy, and settle it. 1 Story's Eq. J. 64 to 74, 454 to 458.

*J. B. Coleman*, for appellee, contended :

Resulting trusts are defined to be "trusts implied by law, from the *manifest intention* of the parties, and the nature and justice of the case." 4 Kent's Com. 305 ; 2 Story's Eq. 438.

Thus, "When a purchase is made in the name of one person, and the purchase-money is paid by another, there is a resulting trust in favor of him who made the payment." 4 Dessauss, 491 ; 1 A. K. Mash. 47 ; 4 J. J. Marsh. 592 ; 1 Johns. Ch. R. 582 ; 2 Johns. R. 409.

" A resulting trust cannot be raised *against the intention* of the parties." 2 Paige, 317.

" If *A.* pay part only of the consideration money, and the deed is taken in the name of *B.*, the land can only be charged with the money advanced by *A. pro tanto.*" 2 Johns. Ch. R. 409.

"Parol evidence is admissible to rebut a resulting trust. And it may also be rebutted by circumstances given in evidence." 2 Story's Eq. 445 ; 2 Johns. Ch. R. 409.

Taking the foregoing principles for our guide, let us see how the claim of Mrs. Capers stands, as presented by her cross-bill alone, and entirely irrespective of the answer of McCaa.

1. She shows that $12,000 was the price of the land, and she claims to have paid, say $6,000. At the best, then, she would only be entitled to a resulting trust *pro tanto*—that is, in one-half of the land.

2. A resulting trust being implied from the *manifest intention* of the parties—and that intention being liable to be rebutted by parol evidence and by circumstances—let us see if the case, as presented by the cross-bill itself, does not fully rebut the presumption that it was the intention of the parties, or of Mrs. Capers herself, that the land purchased with her money should be hers.

It will not, we suppose be controverted, that if *A.* with the express assent of *B.* applies the money of *B.* to the purchase of land for himself and in his own name, there can be no resulting

trust in the land in favor of *B.* It is then the simple case of a loan of the money by *B.* to *A.* to make the purchase, and if *B.* had intended that the land should be a security, or in any way bound for the repayment of the money loaned, he would, of course, have taken some lien upon it—his assent to the use of the money, and his failure to take any lien upon the land, thus rebutting any presumed intention upon which a resulting trust could be raised. See *Gibson* v. *Foote*, MS.

McCaa had no notice that the money belonged to Mrs. Capers. He is therefore a *bonâ fide* purchaser from Capers, without any notice, actual or constructive, of any implied or resulting trust in favor of Mrs. Capers—and all claim on her part against him, or against his interest in the land, falls to the ground. *Oliver et al.* v. *Pratt*, 3 How. S. C. R. p. 401.

But there is still another point of view, in which the claim attempted to be set up by Mrs. Capers against McCaa is wholly untenable.

Her claim is, that as the money paid by Capers on the purchase was her money, the title which he acquired by its investment was in equity vested in her, or in him only as her trustee and for her use.

Admit this, and then it becomes necessary to ascertain what title Capers acquired.

The deed to Capers, and the mortgage by him of the same land back to McCaa, to secure the payment of the purchase-money, were simultaneous acts—the seizin of Capers was what the books term *instantaneous*, and passed from him *eo instanti* that he acquired it—so that his widow could not have claimed dower in it. *Jackson* v. *Dewitt*, 6 Cowen, 316 ; *Stow* v. *Tift*, 15 Johns. R. 458.

Why is this? Because the deed and the mortgage are a unit, and constitute together but one contract or transaction, by the terms of which the land is held and bound to McCaa for the full payment of the purchase-money—a security which, without the assent of McCaa, cannot be defeated or lessened by any act of Capers short of full payment—just as though McCaa instead of taking a distinct mortgage, had, in his deed to Capers, reserved

a special mortgage for the payment of the purchase-money, or instead of making a deed, had given a bond conditioned for the making a title when the purchase-money was paid.

The title, then, which Capers acquired was qualified by, and subject to the paramount lien of McCaa, and Mrs. Capers takes it with the same qualification, and subject to the same lien, and can only remove or destroy this lien, as Capers himself could only have done, by the payment of the purchase-money.

But again, Mrs. Capers has, by executing jointly with her husband the mortgage to McCaa, estopped herself from setting up against McCaa any equity she may have in consequence of the alleged appropriation of her money by her husband.

If the title taken by Capers to himself is in equity vested in Mrs. Capers, then the case stands as though the title had been made directly to Mrs. Capers.

*She* is thus the purchaser of the land instead of *Capers*, and having given the mortgage to secure the payment of the purchase-money, is estopped from setting up against McCaa any claim or title, legal or equitable, which will defeat or impair the value of the security she has given him.

A vendor who subsequently acquires a better title is estopped from setting up such title against the vendee, or those claiming under him. *Blidsoe* v. *Little*, 4 How., p. 23.

This principle, which is sustained by all the books, fully covers this last point.

3. The third and last ground of defence set up in the cross-bill consists of allegations of misfeasance, malfeasance, &c., on the part of McCaa *as administrator of Capers*, and is simply a naked, undisguised attempt to transfer from the Probate to the Chancery Court, the *administration* of the estate of Capers.

HANDY, C. J., delivered the opinion of the court.

This bill was filed by the appellee against the appellants, the widow and heirs-at-law of Bedford E. Capers, deceased, to foreclose a mortgage executed by Capers and wife on a tract of land, as a security for several promissory notes made by Capers

for the purchase-money of the same tract of land, which was sold and conveyed to him by the appellee. The deed of conveyance from the appellee to Bedford E. Capers, and the mortgage to the appellee, bear the same date. The original amount of the purchase-money was $12,000; of which $2,500 was paid in cash, and for the residue four promissory notes were executed by Capers, the first one of which was paid by Capers in his lifetime, and he also paid $1,300 on the second.

The appellants answered, admitting most of the statements of the bill, and, by way of cross-bill, alleging that the sums of money paid, as above stated, were paid with money which was the separate property of Mary E. Capers, then the wife of Bedford E. Capers, and were taken from her capital and not from her income, and were received by McCaa with his full knowledge, design, and procurement; and insisting that this gave rise to a resulting trust in the hands of the husband for the use and benefit of the wife, which has not been defeated by his failure to pay at maturity, and which is superior to the equitable interest of McCaa, created by the mortgage; and that the mortgage only applies to the legal estate of Bedford E. Capers, and to his wife's right of dower, in the land conveyed.

Further, that after the death of her husband, she renounced the right of administration on his estate, to McCaa, who took out letters at September term, 1862, and thereupon took possession of the mortgaged premises, and thereafter he, or those holding under him, received the rents, issues and profits thereof until the time of filing the bill, and that McCaa, as administrator of Capers, took possession of seventy-five or eighty bales of cotton, and a large amount of corn, fodder, and other personal property, from all which he had, or ought to have had, in his possession, more than enough to pay all the debts of the deceased, including this mortgage debt; and this personal property is alleged to be the proceeds of the labor of her slaves, belonging to her separate estate, and to have been a part of the income of her separate property; and she insists that McCaa, having received said personal property, as assets of the deceased, is accountable for their value in this proceeding.

The prayer is for an account of the moneys paid out of her separate estate, and for a decree for the payment thereof, and, in default of payment, that the whole mortgaged premises, or such part as may be equitable, be conveyed to her; and for an account of the personalty received by McCaa as administrator, and his acts as such, may be reviewed, and all errors, mistakes, &c., be corrected, reversed and set aside.

The answer to the cross-bill admits the payment of the sums of money by Capers on the mortgage debt, but denies all knowledge of the source from which he derived said sums, or that he received the same with the knowledge that they were derived from Mary E. Capers, or that it was done by his design and procurement; and avers that he received said sums without knowing or inquiry how Capers obtained the money; it charges that the purchase by Capers and the payments made by him, were all done with the knowledge and assent, and by the assent, of said Mary. He insists, that if she have any claim on account of the alleged appropriation of her husband, it is against her husband's estate, and cannot be set up against McCaa; and he demurs to the relief prayed for by her as against him. He denies that the property received by him as administrator was received otherwise than as administrator. He states that all the personal property was appraised at the sum of $3,703.13, of which there was allotted to her $615, and that the balance in his hands, with the exception of fourteen bales of cotton stolen by jayhawkers, was sold by order of the Court of Probate; which said sale was reported by him to, and was confirmed by, said court. He avers that this embraced all the property of the deceased which came to his possession, and he entirely denies all the allegations of the cross-bill, to the contrary of these statements as to the personal property of the deceased: and that he has only received of the proceeds of the sale of the said property $78.40, which he has fully accounted for, and that the estate has been duly declared insolvent. He demurs to so much of the cross-bill as seeks to hold him accountable in a court of equity for the matters pertaining to his administration of McCaa's estate. He denies that he ever had possession of the land, or received any rent for it.

The cause was submitted for final hearing on the original bill and the answers thereto, upon the cross-bill, answer and demurrer thereto, and upon the exhibits and proofs; and the demurrer to the cross-bill was sustained and the cross-bill dismissed; and a decree of foreclosure and sale of the mortgaged premises was made; from which this appeal was taken.

The only error assigned is, that the demurrer to the cross-bill was sustained.

It appears, by the record, that a separate demurrer to the entire cross-bill was first filed; and that afterwards an answer to the cross-bill was filed containing a clause of demurrer to the relief sought in the cross-bill on account of the alleged payment of the wife's money for the purchase-money of the land; and secondly, a clause of demurrer to the jurisdiction of the court in relation to the matters pertaining to the administration of the estate, set up in the cross-bill. It would appear that the separate demurrer was in fact waived, and that the cause was submitted and considered upon the entire pleadings and proofs, as well as upon the special grounds of demurrer raised in the answer to the cross-bill.

The first question arising upon the demurrer is, whether the application of the wife's money to the payment of the purchase-money of the land, under the circumstances of the case, creates a resulting trust in her favor upon the land, against the right of the mortgagor, the original vendor.

The ground on which the doctrine of resulting trust rests, with reference to property purchased with the money or means of one person and conveyed to another person, is the presumption of law that the party whose money is applied to the payment for the property *intended it for his own benefit*, and that the nominal purchaser is a mere trustee. Adams' Equity, 33. But this presumption is liable to be rebutted either by positive or negative proof, or by the declarations of the parties contemporaneous with the transaction of purchase, or by other direct proof of intention, or by the circumstances attending the transaction, showing that such was not the intention of the parties at the time. Ib. 34.

When we consider the circumstances attending this transaction as they appear by the pleadings and exhibits in the record, the facts are entirely irreconcilable with the hypothesis that any right or interest in the land was *intended* to be reserved in behalf of the wife against the mortgagor.

· In the first place, the transaction originated in a sale and conveyance of the land by McCaa to Capers, the husband; and the purchase-money being, for the most part, unpaid, the mortgage involved in this suit was executed by Capers and wife to secure the payment of the unpaid purchase-money. These two instruments were executed on the same day, and must be regarded, in law, as contemporaneous acts. Consequently no absolute title vested in the husband under the deed to him. It is very clear that the wife could not have established her alleged resulting trust against her husband until the mortgage was discharged or satisfied. For he acquired no absolute title to the property, having instantly reconveyed it to the vendor upon receiving the conveyance to himself. Much less could she assert such a right against the mortgagor. For he was the original owner and vendor of the land, and, as part of the same transaction by which he had conveyed it, took a reconveyance by way of mortgage to secure the payment of the purchase-money. He, then, occupied the position of a vendor, whose purchase-money was unpaid, and who had not conveyed the land. And it is manifest that a resulting trust can never be established to deprive the vendor of his claim upon the land for unpaid purchase-money, especially where he has made no conveyance. And indeed the whole doctrine of resulting trust in cases of this sort, proceeds on the idea that the land has been conveyed by the vendor, and that the purchase-money has been paid to him. We have been able to find no case giving any support to the idea that a resulting trust can ever be established against a vendor whose purchase-money has not been paid, and who has not acted in bad faith. Nor can we perceive on what principle of equity such a doctrine could be maintained.

But, in addition to this, the wife assented to the reconveyance, by joining in the mortgage. This was part of the same

transaction by which the land was sold and conveyed to the husband. It was the security which he required for his purchase-money, and without which, it is to be presumed, he would not have made the sale. The necessary effect of the mortgage was to give him the right of satisfaction of his purchase-money, superior to any rights that could possibly accrue to any other person by reason of the sale and conveyance. And to this the wife must be held to have fully assented, because the execution of the mortgage by her is wholly inconsistent with any other view. It fully rebuts any presumption that could possibly be entertained, that she intended, in advancing her money to her husband, to secure a resulting trust in her favor against the land in the hands of the mortgagor.

It is therefore clear that the demurrer to the relief sought in the cross-bill was properly sustained in this respect.

The second question, on the demurrer, is whether a court of equity was competent to grant the relief sought in the cross-bill, with reference to the administration of the estate in the Court of Probates.

The cross-bill—after setting out various matters of maladministration on the part of the administrator, and that he had, or ought to have had, in his possession, means more than enough to pay all the debts of the estate—prays for an account of the personalty received by the administrator, and that his acts as such may be reviewed, and that all errors and mistakes may be corrected and reversed.

It is plain that all these matters belong to the jurisdiction of the Court of Probates exclusively, with which a court of equity could not interfere.

But it is insisted in behalf of appellants, that the personal property which came to McCaa's hands, as administrator, was the income of the wife's separate estate, not subject in his hands to administration, and that he is therefore accountable in a court of equity for that property.

But this is clearly not the true aspect of the cross-bill. Taking all its statements into consideration, it is evident that he was sought to be made liable as administrator, and not other-

wise; and the prayer is, that " all his actings and doings, *as administrator*, may be reviewed, and any and all errors, mistakes, misfeasances and malfeasances may be set aside, reversed," &c.

Were this, however, as insisted on by counsel in argument, we do not see how the alleged claim of the widow against McCaa for the conversion of her property to his own use, or to that of the estate of Capers, would entitle her to come into a court of equity for a redress of the grievance.

Let the decree be affirmed.

Mr. Justice Ellett did not sit in this cause.